1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| STEELMAN PARTNERS, a Nevada Limited liability partnership, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:09-cv-01016-GMN-GWF |
| vs. | ) ) | **ORDER** |
| SANYA GAOSHENG INVESTMENT COMPANY LTD, a Hong Kong corporation, | ) ) ) | **Motion for Sanctions (#92)** |
| Defendant. | ) ) | |

        This matter is before the Court on Plaintiff's Motion for Sanctions (#92) filed on November 19, 2015.  Defendant filed its Opposition (#97) on December 7, 2015 and Plaintiff filed its Reply (#99) on December 17, 2015.  The Court conducted a hearing in this matter on December 22, 2015.

## BACKGROUND

        Plaintiff filed a complaint for breach of contract and copyright infringement against Defendant in June 2009.  Plaintiff alleged that Defendant failed to pay Plaintiff for an architectural design for a resort hotel project and for using Plaintiff's plans, drawings and renderings in violation of Plaintiff's copyright.  After the parties engaged in substantial discovery and unsuccessful settlement negotiations in March-June 2011, Defendant's counsel moved to withdraw and their motion was granted on July 11, 2015.  Defendant thereafter failed to retain new counsel to represent it in this action.  On September 27, 2011, the undersigned magistrate judge recommended that Defendant's answer be stricken and its default entered based on its failure to retain new counsel. *Report and Recommendation (#55).*  The district judge approved and adopted the recommendation on November 4, 2011 and Defendant's default was entered on that date. *See Docket Entries #56*

*and #57.* Plaintiff thereupon moved for entry of a default judgment which was granted by the Court on November 23, 2011 in the amount of $3,549,854.00. *Order Granting Motion for Default Judgment (#59)* and *Default Judgment (#60).*

Plaintiff's efforts to collect the judgment have been unsuccessful. In November 2012, Plaintiff certified the default judgment in the Central District of California. Thereafter, on April 17, 2014, Plaintiff filed a motion to amend the judgment to add as additional judgment debtors, Mr. Piu Ying Ngan and Mrs. Katherine Ngan ("the Ngans"), whom Plaintiff claims are the alter egos of Defendant. The court held that Plaintiff failed to meet its burden under California Code of Civil Procedure Section 187 which requires Plaintiff to show (1) that the new party is the alter ego of the old party and (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns. *See Defendant's Reply in Support of Motion for Protective Order (#93), Exhibit 6, Order Denying Plaintiff's Motion to Add Judgment Debtors.*

In April 2015, Plaintiff served Defendant with a Fed.R.Civ.Pro. 30(b)(6) notice of deposition to be taken on April 24, 2015. The notice directed Defendant to produce a deponent to testify on the following areas of inquiry: (1) The person who directed Mr. Anthony Tong (Defendant's Hong Kong counsel) in connection with the litigation; (2) Mr. Pui Ying Ngan's involvement in the Litigation; (3) Mrs. Katherine Ngan's involvement in the Litigation; (4) the identity of the persons or entities involved in and/or responsible for financing and directing the Litigation on behalf of Sanya; (5) Payment of legal bills of Sanya's counsel, including related sub-topics; (6) the person or persons at Sanya responsible for retaining Sanya's counsel, signing engagement letters with Sanya's counsel, and/or paying Sanya's counsel; (7) the person or persons at Sanya that requested that Lewis & Roca discount their legal fees during the litigation; (8) the identity of the person or persons involved in directing the litigation on behalf of Sanya; (9) the identity of the person or persons involved in or responsible for the strategic decisions in the Litigation; (10) the identity of the person or persons at Sanya that were the main point of contact for Sanya's counsel; (11) the identity of the person or persons at Sanya that made or participated in litigation strategy decisions or drafted litigation materials; (12) Sanya's engagement letter(s) with Sanya's counsel related to the Litigation; (13) the identity of the person or persons involved in the preparation of memoranda, briefing or

reports provided to Sanya's counsel concerning the Litigation; (14) the identity of the person or persons at Sanya that reviewed, edited and/or approved pleadings and other litigation materials in connection with the Litigation; (15) the identity of the person or persons at Sanya that was responsible for settlement discussions with Steelman, including the person that approved settlement offers made to Steelman; (16) the identity of the person or persons at Sanya that was involved in and/or responsible for the mediation between Steelman and Sanya; and (17) documents in Sanya's possession relevant to the foregoing areas of inquiry. *Motion to Compel (#80), Exhibit C.*

Defendant did not serve any written objection to the notice of deposition or the areas of inquiry listed in the notice. Nor did Defendant file a motion for protective order against the taking of the deposition. Defendant did not appear for the deposition on April 24, 2015. On August 24, 2015, Plaintiff filed its motion to compel Defendant to appear for the Rule 30(b)(6) deposition. Defendant did not file a response to the motion to compel. Nor did it appear at the October 2, 2015 hearing on the motion. The Court granted Plaintiff's motion to compel and ordered Defendant to appear for the deposition to be re-noticed no later than December 2, 2015. The Court also granted Plaintiff's request for costs and attorney's fees relating to Defendant's nonappearance and the filing of the motion to compel. *Order (#84).*

In accordance with the Court's order, on October 8, 2015 Plaintiff served an amended notice to take Defendant's Rule 30(b)(6) deposition. The deposition was scheduled for November 4, 2015. *Opposition to Motion for Protective Order (#91), Exhibit B.* On November 2, 2015, Defendant filed a motion for protective order in regard to the re-noticed deposition. *See Motion for Protective Order (#87).* Defendant did not request emergency relief or move to stay the taking of deposition. Once again, Defendant failed to appear for the deposition. On December 23, 2015, the Court denied Defendant's motion for protective order on the grounds that it was untimely. In this regard, the Court had previously granted Plaintiff's unopposed motion to compel the Defendant to appear for the deposition. If the Defendant has legitimate objections to the Rule 30(b)(6) deposition, it should have filed a motion for protective order in response to the first notice of deposition in April 2015, or should have filed an opposition to Plaintiff's motion to compel filed on August 2, 2015. *See Minutes of Proceedings (#100).*

Plaintiff now moves for sanctions based on Defendant's failure to appear for the re-noticed Rule 30(b)(6) deposition on November 4, 2015 as required by *Order (#84)*. Plaintiff argues that Defendant's failure to comply with the Court's order was willful and justifies the imposition of sanctions pursuant to Fed.R.Civ.Pro. 37(b)(2)(A)(i) which provides as follows:

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims.

Pursuant to this provision, Plaintiff requests that the following matters, which were the subject of the areas of inquiry in the Rule 30(b)(6) notice of deposition, be deemed established:

1.     Sanya is owned and controlled by Mr. Pui Ying Ngan and Mrs. Katherine Ngan (the "Ngans").

2.     There is a unity of interest and ownership such that the separate personalities of Sanya and the Ngans do not exist.

3.     The Ngans co-mingled personal assets and funds with those of Sanya.

4.     The Ngans treated the debts of Sanya as their own and treated Sanya's liabilities as their own personal responsibility.

5.     The Ngans used personal funds to pay for debts owed by Sanya to Steelman.

6.     The Ngans used funds from other entities they owned and controlled to pay debts owed to Steelman.

7.     The Ngans used Sanya as a mere shell for the venture of developing a resort property.

8.     The Ngans used Sanya to execute a multi-million dollar contract with Steelman with no ability or intention to pay for the design.

9.     After the judgment entered against Sanya, the Ngans closed Sanya's doors, moved the entity out of its office in an effort to obstruct Steelman's collection efforts.

10.    The Ngans diverted Sanya's assets in order to avoid liability to Steelman.

. . .

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

11.   The same office location was used for numerous entities owned and controlled by the Ngans.

12.   The Ngans understood and appreciated that there was a sufficient unity of interest to treat the Ngans and Sanya as interchangeable alter egos of one another.

13.   The Ngans controlled, reviewed and approved all payments made by Sanya, either to Steelman during the project or to Sanya's counsel in connection with the lawsuit filed by Steelman against Sanya in 2009, Case No. 09-cv-01016-ECR-GWF ("the Nevada Litigation").

14.   The Ngans controlled and financed the Nevada Litigation.

15.   The Ngans hired and communicated with defense counsel regarding the Nevada Litigation.

16.   The Ngans were the main point of contact for Mr. Anthony Tong, who in turn was the only point of contact with respect Sanya's Nevada counsel for the Nevada Litigation.

17.   The Ngans were solely responsible for and controlled the settlement negotiations with Steelman on behalf of Sanya related to the Nevada Litigation.

18.   The Ngans paid for, and continue to pay, for services related to the Nevada Litigation provided by defense counsel from their personal finances.

19.   The Ngans participated in and were responsible for litigation strategy decisions, including review and approval of litigation materials, such as motions and responses, on behalf of Sanya in the Nevada Litigation.

20.   By their direct involvement in the Nevada Litigation, the Ngans are fully apprised of the litigation as a main point of contact for Sanya.

21.   By their direct involvement in this lawsuit, the Ngans had occasion to conduct the Nevada Litigation with diligence corresponding to the risk of personal liability that is involved.

22.   The Ngans are virtually represented in the Nevada Litigation.

## **DISCUSSION**

"'Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion.  First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery.'" *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001), quoting *Ins. Corp. of Ireland, Ltd., v. Compagnie des*

5

1  *Bauxites de Guinee*, 456 U.S. 694, 707, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).  In *Navellier*,

2  counsel for the plaintiff willfully refused to answer questions at his deposition concerning the

3  circumstances under which insurance was procured for the Fund, even after being ordered to answer

4  the question by the special master.  As a sanction for the refusal to answer this question, the district

5  court instructed the jury that plaintiff breached his duty to procure liability insurance for the Fund.

6  The Ninth Circuit held that the district court did not abuse its discretion in imposing the sanction.

7  Plaintiff's Rule 30(b)(6) notice of deposition is directed at obtaining evidence to support a

8  renewed effort to add Mr. Pui Ying Ngan and Mrs. Katherine Ngan as judgment debtors.  Although

9  Mr. and Mrs. Ngan may be the owners of Defendant Sanya Gaosheng Investment Company, Ltd.,

10  and may have participated in and controlled its conduct during this litigation, they are not parties to

11  this lawsuit.  (Nor, of course, were they designated as deponents for the Rule 30(b)(6) deposition.)

12  Because Mr. and Mrs. Ngan are not parties, the Court does not believe the requested evidentiary

13  sanctions under Rule 37(b)(2)(A)(i) are appropriate.  Such sanctions cannot reasonably be binding

14  on the non-party Ngans with respect to any renewed motion to add them as judgment debtors.

15  Defendant also argues that Plaintiff is precluded by res judicata or collateral estoppel from again

16  attempting to add the Ngans as judgment debtors.  Plaintiff argues that the previous order denying

17  their motion does not have preclusive effect.  This Court takes no position on that issue.

18  Plaintiff requests that the Court enter the requested evidentiary sanction against Defendant

19  Sanya without *per se* making the sanctions applicable to the Ngans.  The Court, however, sees no

20  purpose to such a sanction given that Plaintiff already has a judgment against Defendant Sanya,

21  albeit one that is apparently uncollectible from that entity.

22  The Court sympathizes with Plaintiff's inability to obtain discovery from the Defendant or

23  its principals that might allow it to pursue collection from other sources.  Nevertheless, the Court

24  concludes that the requested sanction is not proper because it is directed at persons who are not the

25  disobedient party.  The Court will, however, award to Plaintiff its reasonable costs and attorney's

26  fees relating to its second attempt to depose Defendant and in pursuing the motion for sanctions.

27  The Court will stay the enforcement of these additional monetary sanctions if Defendant appears for

28  and testifies fully at a rescheduled Rule 30(b)(6) deposition.  Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Sanctions (#92) is **granted**, in part, and **denied**, in part as follows:

1.    The Court denies Plaintiff's request for evidentiary sanctions pursuant to Rule 37(b)(2)(A)(i).

2.    The Court awards to Plaintiff its reasonable costs and attorney's fees incurred in connection with the re-noticed deposition on November 4, 2015 and its motion for sanctions.  The Court will stay and potentially vacate imposition of these monetary sanctions if Defendant appears for a re-noticed Rule 30(b)(6) depositon and provides responsive and complete testimony regarding the areas of inquiry.

3.    Counsel for Plaintiff shall, no later than 15 days from entry of this order, serve and file a memorandum, supported by the affidavit of counsel, establishing the amount of attorney's fees and costs incurred in the motion addressed in this order.  The memorandum shall provide a reasonable itemization and description of the work performed, identify the attorney(s) or other staff member(s) performing the work, the customary fee of the attorney(s) or staff member(s) for such work, and the experience, reputation and ability of the attorney performing the work.  The attorney's affidavit shall authenticate the information contained in the memorandum, provide a statement that the bill has been reviewed and edited, and a statement that the fees and costs charged are reasonable.

4.    Counsel for Defendant shall have 15 days from service of the memorandum of costs and attorney's fees in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought, and any equitable considerations deemed appropriate for the court to consider in determining the amount of costs and fees which should be awarded.

5.    Counsel for Plaintiff shall have 11 days from service of the responsive memorandum in which to file a reply.

DATED this 24th day of December, 2015.

_George Foley Jr._
GEORGE FOLEY, JR.
United States Magistrate Judge