1
2
3
4
5          **UNITED STATES DISTRICT COURT**

6          **DISTRICT OF NEVADA**

7
8
9   STEELMAN PARTNERS, a Nevada Limited          )
    liability partnership,                        )
10                                                 )          Case No. 2:09-cv-01016-GMN-GWF
                    Plaintiff,                     )
11                                                 )
    vs.                                            )          **ORDER**
12                                                 )
    SANYA GAOSHENG INVESTMENT                      )          **Motion for Sanctions (#107)**
    COMPANY LTD, a Hong Kong corporation,          )
13                                                 )
                    Defendant.                     )
14  _____)

15
16          This matter is before the Court on Plaintiff's Motion for Sanctions (ECF No. 107) filed on

17  April 26, 2016.  Defendant Sanya Gaosheng Investment Company, Ltd. (hereinafter "Sanya

    Gaosheng") filed its Opposition (ECF No. 109) on May 12, 2016, and Plaintiff filed its Reply (ECF
18
    No. 111) on May 23, 2016.  The Court conducted a hearing in this matter on June 1, 2016.
19
20                                  **BACKGROUND**

21          Plaintiff filed a complaint for breach of contract and copyright infringement against

22  Defendant Sanya Gaosheng in June 2009.  Plaintiff alleged that Defendant failed to pay Plaintiff for

23  an architectural design for a resort hotel project on Hainan Island, China and for using Plaintiff's

24  plans, drawings and renderings in violation of Plaintiff's copyright.[1]  After the parties engaged in

25
    _____
26
            [1]Defendant Sanya Gaosheng is a Chinese corporation.  The complaint alleged that "[t]his Court has
27  personal jurisdiction over Sanya based on the forum selection clause in the parties' contract, wherein Sanya
    expressly agreed to the exclusive jurisdiction of the Nevada Courts."  *Complaint (EFC No. 1)*, ¶ 3.  Although
28  Defendant denied this allegation in its answer, it subsequently cited the forum selection provision in its motion to
    compel mediation.  *Motion to Compel Mediation (ECF No. 13), pgs 2-3.*  Defendant did not actively contest
    personal jurisdiction prior to abandoning its defense of the lawsuit and permitting a default judgment to be
    entered against it.

substantial discovery and unsuccessful settlement negotiations in March-June 2011, Defendant's

counsel moved to withdraw and their motion was granted on July 11, 2011.  *Order (ECF No. 53)*.

Defendant thereafter failed to retain new counsel to represent it in this action.  On September 27,

2011, the undersigned magistrate judge recommended that Defendant's answer be stricken and its

default entered based on its failure to retain new counsel.  *Report and Recommendation (ECF No.*

*55)*.  The district judge adopted the recommendation on November 4, 2011 and Defendant's default

was entered on that date.  *See ECF Nos. 56 and 57*.  Plaintiff thereupon moved for entry of a default

judgment which was granted by the Court on November 23, 2011 in the amount of $3,549,854.00.

*Order Granting Motion for Default Judgment (ECF No. 59); Default Judgment (ECF No. 60)*.

Plaintiff's efforts to collect the judgment have been unsuccessful.  Although Defendant Sanya

Gaosheng apparently still exists as an active business entity, Plaintiff's ability to enforce its

judgment has been hampered by Defendant's foreign location.  In November 2012, Plaintiff certified

the default judgment in the Central District of California.  Thereafter, on April 17, 2014, Plaintiff

filed a motion to amend the judgment to add as additional defendants on the judgment, Mr. Piu Ying

Ngan and Mrs. Katherine Ngan ("the Ngans") whom Plaintiff alleges are Defendant's alter egos.

The court denied the motion to amend; holding that Plaintiff failed to meet its burden under

California Code of Civil Procedure Section 187 which requires Plaintiff to show (1) that the new

party is the alter ego of the old party and (2) that the new party had controlled the litigation, thereby

having had the opportunity to litigate, in order to satisfy due process concerns.  *See Steelman*

*Partners v. Sanya Gaosheng Investment Company, Ltd.*, United States District Court for Central

District of California, Case No. CV 13-0435-GHK (E), Civil Minutes, May 29, 2014 (hereinafter

*"Minute Order"*).[2]

In an effort to develop a factual basis to establish the personal liability of the Ngans for the

judgment, Plaintiff noticed the deposition of Defendant Sanya Gaosheng pursuant to Fed.R.Civ.P.

30(b)(6).  The deposition was originally scheduled for April 24, 2015 and the notice included topics

---

[2]A copy of the minute order is attached as Exhibit 1 to Defendant's *Reply (EFC No. 93)* in support of it prior motion for protective order.

1  relating to the Ngans' involvement in and control over this litigation. *Motion (ECF No. 107),*

2  *Exhibit C, Deposition Notice.* Defendant Sanya Gaosheng, however, failed to appear for the

3  deposition. This Court thereafter granted Plaintiff's unopposed motion to compel Defendant Sanya

4  Gaosheng to appear for deposition, *Order (ECF No. 84),* and subsequently awarded monetary

5  sanctions against Defendant Sanya Gaosheng for its failure to comply with the Court's order. *Order*

6  *(ECF No. 101).* The Court declined, however, to impose evidentiary sanctions that would in effect

7  establish that the Ngans controlled the subject litigation since its inception and are the alter egos of

8  Defendant Sanya Gaosheng. *Id., pgs 4-5.*

9  **DISCUSSION**

10  1.   **Plaintiff's Request for Evidentiary Sanctions.**

11  Plaintiff requests that the Court impose evidentiary sanctions that would establish the Ngans

12  as the alter egos of Defendant Sanya Gaosheng. Plaintiff's current motion is premised, in part, on its

13  having again noticed the Rule 30(b)(6) deposition of Defendant Sanya Gaosheng and Defendant

14  having again failed to appear. Plaintiff also cites legal authority regarding the Court's inherent

15  power to sanction non-parties that was not provided in its previous motion for sanctions.[3] Defendant

16  opposes the imposition of evidentiary sanctions on the grounds that they are directed at the Ngans

17  who are not parties to this action and may not be the subject of sanctions.

18  In denying Plaintiff's motion to amend the judgment to add the Ngans as defendants, the

19  District Court for the Central District of California stated that "we may not amend the judgment

20  entered by the United States District Court for the District of Nevada against Defendant and in favor

21  of the Plaintiff because it was entered by default. Due process concerns bar us from amending a

22  default judgment." *Minute Order, pg. 2*, citing *Motores De Mexicali, S.A. v. Super. Ct. of Los*

23  *Angeles Cnty.*, 51 Cal.2d 172, 175-76 , 331 P.2d 1, 3-4 (1958).

24  In *Katzir's Floor and Home Design v. M-MLS.COM*, 394 F.3d 1143, 1149-50 (9th Cir.

25  2004), the Ninth Circuit also held that a shareholder who was the alleged alter ego of the defendant

26

27

28  [3]Although not styled as such, Plaintiff current motion can be viewed as a motion for reconsideration of the prior order denying imposition of evidentiary sanctions.

corporation could not be added as a defendant on a default judgment.  The court stated:

> The purpose of the requirement that the party to be added to the judgment had to have controlled the litigation is to protect that party's due process rights.  Due process 'guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses.' *Motores De Mexicali, S.A. v. Super. Ct. of Los Angeles Cnty.*, 51 Cal.2d 172, 175-76 , 331 P.2d 1, 3-4 (1958).  A prior judgment against a corporation "'can be made individually binding on a person associated with the corporation only if the individual to be charged . . . had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved.'" *NEC*, 256 Cal.Rptr. at 444 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 59, at 102 (1982)).

If a defendant corporation fails to defend an action and a default judgment is entered against it, however, due process does not permit an alleged alter ego to be added as a defendant on the default judgment.  The court in *Katzir's*, applying California law, discussed *NEC Elecs. Inc. v. Hurt*, 208 Cal.App.3d 772, 256 Cal.Rptr. 441 (Cal.Ct.App. 1989) in which the court refused to amend a default judgment to add the sole shareholder as a defendant.  *Katzir's* noted that "[t]he corporation did not appear at trial or defend itself, despite a colorable defense, because it was on the verge of bankruptcy.  The court reasoned that the sole shareholder, who was not a named party to the suit and had no personal liability, had no duty to intervene.  *NEC*, 256 Cal.Rptr. at 442, 445 (relying on *Motores*).  It further found that the shareholder's interests were not represented during the lawsuit where the corporation had no incentive to, and in fact did not, defend given its pending bankruptcy." *Katzir's*, 394 F.3d at 1150.   Likewise, the sole shareholder in *Katzir's* knew that his wholly owned corporation was on the verge of dissolution and that he had no personal duty to defend the underlying lawsuit.  Quoting *Motores*, 331 P.2d at 3, the court stated that "[t]o summarily add [corporate shareholders] to [a] judgment hereto running only against [the corporation], without allowing them to litigate any questions beyond their relation to the allegedly alter ego corporation would patently violate [due process]." *Id.* at 1150.

The District Court in the Central District of California also stated that Plaintiff failed to establish that the Ngans controlled the litigation on behalf of the Defendant.  *Minute Order, pgs 2-3.* Although not addressed in the minute order, even if the Ngans exercised control over the litigation, or over Defendant Sanya Gaosheng generally, this alone would not establish their alter ego status.

4

*Katzir's* states in this regard as follows:

> The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory. *See id.* (listing examples of the "critical facts" needed to establish that it would be inequitable to respect separate corporate identities "as inadequate capitalization, commingling of assets, [or] disregard of corporate formalities"). . . . The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003) ("The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances."); 1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations § 41.35, at 671 (perm.ed., rev.vol.1999) ("[A]llegations that the defendant was the sole or primary shareholder are inadequate as a matter of law to pierce the corporate veil. Even if the sole shareholder is entitled to all of the corporation's profits, and dominated and controlled the corporation, that fact is insufficient by itself to make the shareholder personally liable." (footnote omitted).

394 F.3d at 1149.

Nevada law is consistent with this analysis. *Lorenz v. Beltio, Ltd.*, 114 Nev. 795, 963 P.2d 488, 496 (1998). The shareholder defendants in *Lorenz* testified that they adhered to the corporate formalities such as conducting shareholder and director meetings and keeping minutes. The Court stated that "[i]f these were the only facts presented below, we could easily conclude that the district court correctly determined that a 'unity of interest and ownership' did not exist and, therefore, the alter ego doctrine should not apply." Other evidence overwhelmingly demonstrated, however, that the corporation "'had no apparent independent business operation and existed solely for the purpose of conducting the personal business of' [shareholders]." *Id.* 114 Nev. at 808, 963 P.2d at 496. *See also Zander v. Tropicana Entertainment, Inc.*, 2016 WL 632208, *3 (D.Nev. Feb. 17, 2016) (holding that mere control of the corporation as an owner or director does not establish sufficient grounds to pierce the corporate veil).

Rule 69(a)(2) of the Federal Rules of Civil Procedure states that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor— as provided in these rules or by the procedure of the state where the court is located." *Danning v. Lavine*, 572 F.2d 1386, 1390 (9th Cir. 1078) states that "[t]he discovery contemplated by rule 69(a) is a distinct phase of the litigation with a narrow focus. It is solely to enforce the judgment

1   by way of supplemental proceedings." *See also United States v. Warren*, 2011 WL 3319877, *2

2   (E.D.Cal. July 29, 2011).  Within that area of focus, however, the scope of post-judgment discovery

3   is broad.  The judgment creditor must be given the freedom to make a broad inquiry to discover

4   hidden or concealed assets of the judgment debtor, and also obtain information relating to transfers

5   of the judgment debtor's assets.  *1ST Technology, LLC v. Rational Enterprises LTDA*, 2007 WL

6   5586692, *4 (D.Nev. Nov. 13, 2007) (quoting *British International 11*, 200 F.R.D. 586, 588

7   (W.D.Tex. 2000)).

8           The Rule 30(b)(6) deposition of Defendant Sanya Gaosheng was directed at obtaining

9   information relating to the Ngans' alleged control over this litigation on behalf of the Defendant.

10   *Motion (ECF No. 107), Exhibit C, Deposition Notice.*  An argument can perhaps be made that the

11   deposition topics are not within the scope of discovery under Rule 69(a) because they were directed

12   at establishing facts to impose personal liability on the Ngans, rather than uncovering the

13   Defendant's assets.  Defendant Sanya Gaosheng, however, did not object to the deposition or oppose

14   Plaintiff's initial motion to compel it to appear.  Defendant's subsequent motion for a protective

15   order, which was filed after it had already been ordered to appear and sanctioned for failing to do so,

16   was untimely.  Thus, the imposition of sanctions against Defendant Sanya Gaosheng for its failure to

17   comply with the Court's orders was altogether proper.[4]

18           Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure states that if a party or a party's

19   officer, director or managing agent —or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails

20   to obey an order to provide or permit discovery, the court may issue further just orders, including:  (i)

21   directing that the matters embraced in the order or other designated facts be taken as established for

22   purposes of the action, as the prevailing party claims, or (ii) prohibiting the disobedient party from

23   supporting or opposing designated claims or defenses, or from introducing designated matters into

24   evidence.  An order imposing evidentiary sanctions must be just, and the sanction must be

25

26           [4]The Court recognizes the likely futility of monetary sanctions against Defendant Sanya Gaosheng.
27   Plaintiff has been unable to collect on its $3,549,854.00 default judgment and there is no reason to believe it will
    be anymore successful in collecting monetary sanctions from Defendant.  Imposition of monetary sanctions has
28   not induced Defendant to appear for the deposition.

specifically related to the particular claim that was at issue in the order to provide discovery. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee (Compagnie des Bauxites)*, 456 U.S. 694, 707, 102 S.Ct. 2099, 2107 (1982).  In *Compagnie des Bauxites*, the Court affirmed a discovery sanction which established personal jurisdiction over defendants who failed to comply with orders requiring them to produce documents relevant to determining personal jurisdiction.

In *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 393-95 (N.D.Cal. 2012), defendants failed to comply with orders that they produce documents and a Rule 30(b)(6) deponent relating to plaintiff's allegations that the individual defendants were the alter egos of the corporate defendant.  Pursuant to Rule 37(b)(2), the court granted a rebuttable trial presumption that the alter ego allegations were established.  In justifying of this sanction, the court stated:

> "There is no doubt that [Plaintiffs'] ability to prove the allegations" in its complaint regarding the alter ego theory of liability was "seriously impaired by the absence of the withheld documents." *General Atomic Co.*, 90 F.R.D. at 308.  The financial documents withheld [by defendants] would have had a bearing on whether or not the defendants identified above were the alter egos of Perfect Day. Additionally, the 30(b)(6) deposition testimony could have shed light on how Perfect Day was structured and who its corporate owners are. Without this testimony, there was no way for Plaintiffs to test their theory that Perfect Day is in fact a corporate shell.  The withheld evidence is uniquely within the possession of the Defendants.  Thus, additional diligent investigation by the Plaintiffs is unlikely to cure the prejudice caused by Defendants' conduct.  Court intervention to protect Plaintiff's ability to prove these allegations is necessary.

281 F.R.D. at 393.

In *Compaq Computer Corp. v. Ergonome, Inc.*, 387 F.3d 403 (5th Cir. 2004), the court affirmed the district court's discovery sanction order which determined that the defendant corporation's principal officer and shareholder, Brown, was its alter ego.  The sanction order resulted in Brown being personally liable for a $2.8 million attorney's fee award to plaintiff.  In affirming the sanction and resulting judgment against Brown, the court cited *Compagnie des Bauxites* that the sanction must be just and must be specifically related to the particular claim that was at issue in the order to provide discovery.  *Id.* at 413.  Although the court did not detail the specific discovery requests, it stated that plaintiff had initially served interrogatories and other discovery requests on the defendant aimed at proving that Brown was defendant's alter ego.  The court noted that "the dispute

1    began in 1998 when the district court ruled that Compaq would be given the opportunity to pierce the

2    corporate veil to provide a jurisdictional basis for joining Brown as a defendant to the action." *Id.* at

3    412.  Plaintiff subsequently made clear to Brown that it sought to establish she was the corporation's

4    alter ego in order to make her personally liable for an award of attorney's fees.  Brown disregarded

5    several court orders which required her to provide the requested discovery and also filed frivolous

6    petitions for writs of mandamus, an appeal, and a bankruptcy petition in an effort to avoid

7    responding to the discovery.  On these facts, the court held that the sanction was justified.

8         Plaintiff's purpose in noticing the Rule 30(b)(6) deposition was to explore and potentially

9    refute Defendant's and the Ngans' representations that the Ngans did not control this litigation on

10   behalf of Defendant Sanya Gaosheng.  According to the May 12, 2014 Declaration of Defendant's

11   financial controller, Eric Wong, filed in opposition to Plaintiff's motion to add the Ngans as

12   defendants on the default judgment, the sole shareholder of Defendant Sanya Gaosheng is a Hong

13   Kong company, Hong Kong Dragon Enterprise Limited, and its board of directors consists of three

14   individuals, Pun Ching Chau, Chow Check Mei and Katherine Ngan.  *Errata to Opposition to*

15   *Motion for Sanctions (EFC No. 110), Exhibit 1*, ¶ 7.  Mr. Wong further stated that "[d]ue to PRC

16   laws regarding foreign exchange controls and remittance of foreign currency by domestic companies

17   to foreign entities, Mrs. Ngan and HK Dragon were required to pay Steelman's bills on behalf of

18   Sanya Gaosheng.  They did so on condition that Sanya Gaosheng would reimburse Mrs. Ngan and

19   HK Dragon in due course." *Id.* at ¶ 12.  Mr. Wong also discussed the fact that Mrs. Ngan made a

20   payment to Plaintiff in 2009 because a signatory of Defendant's bank account was not available to

21   make the required payment, and that Mrs. Ngan made the payment on condition that she be

22   reimbursed by the corporation.  *Id.* at ¶ 13.  According to the district court's minute order in the

23   California proceeding, Mrs. Ngan, as a member of Defendant's board of directors, participated in

24   settlement negotiations with Plaintiff prior to entry of the default judgment.  *Minute Order, pg. 3.*

25        Although these facts do not establish that Mrs. Ngan controlled the litigation on behalf of the

26   Defendant, they do provide a reasonable basis for Plaintiff to inquire further into Mrs. Ngan's

27   involvement in and possible control over it.  Defendant's failure to produce a deponent to testify on

28   these matters justifies a presumption that Mrs. Ngan exerted control over the lawsuit.  Such a

presumption is not legally sufficient, however, to join either of the Ngans as defendants on the default judgment. *Katzir's*, 394 F.3d at 1150; *Minute Order, pg. 2.*  Nor would a presumption that Mrs. Ngan controlled the litigation, standing alone, support the conclusion that she is Defendant Sanya Gaosheng's alter ego.

The seventeen deposition topics seek information relating to the Ngans' alleged control of the litigation. *Motion (ECF No. 107), Exhibit C, Deposition Notice.*  The topics do not inquire into whether Defendant Sanya Gaosheng was inadequately capitalized, whether the Ngans commingled their personal assets with the corporation's assets, or whether the Ngans or Defendant's other shareholders, directors or officers disregarded corporate formalities.[5]  Defendant therefore was not placed on notice that it was required to produce a designee to testify on such matters. Notwithstanding the lack of inquiry into these matters, Plaintiff asks the Court to make twenty-two evidentiary findings, the majority of which would establish that the Ngans are Defendant Sanya Gaosheng's alter egos.  For example, proposed finding No. 2 states that "[t]here is unity of interest and ownership such that the separate personalities of Sanya and the Ngans do not exist."  Proposed finding No. 3 states that "[t]he Ngans co-mingled personal assets and funds with those of Sanya." Proposed finding No. 4 states that "[t]he Ngans treated the debts of Sanya as their own and treated Sanya's liabilities as their own personal responsibility."  Proposed findings Nos. 5, 6, 7, 9, 10 and 12 similarly request findings that establish elements of the alter ego doctrine. *Motion (ECF No. 107), pgs 12-13.*  Because these evidentiary findings are not specifically within the scope of the Rule 30(b)(6) deposition topics, the Court will not impose them as evidentiary sanctions. *Compagnie des Bauxites*, 456 U.S. at 707, 102 S.Ct. at 2107.

The only way for Plaintiff to hold the Ngans personally liable for breach of contract and copyright infringement is to commence a civil action directly against them, establish their status as alter egos of Sanya Gaosheng, and prove that Sanya Gaosheng (and the Ngans) breached the contract and/or infringed Plaintiff's copyright.  In order to pursue such an action, Plaintiff will be required to

---

[5]Topic No. 5 does inquire into the payment of Defendant's legal bills, including the identity of the persons and/or entities that paid for and/or financed the litigation.

allege sufficient facts to state a claim for alter ego liability.  *See e.g. J. Bruce Alverson, Ltd. v. Nortek, Inc.*, 2016 WL 1611108, at *3-*4.  As *Guifu Li v. A Perfect Day Franchise, Inc.* noted, evidence establishing the basis for liability may be uniquely within the possession of the corporation or the individual defendants against whom the alter ego doctrine is asserted.  A plaintiff must have some factual basis beyond mere speculation, however, to allege alter ego liability.  It is not clear to this court that Plaintiff possesses any evidence that would support a claim for alter ego liability.

The record regarding Defendant's willful failure to appear at the deposition in compliance with the Court's order is clear.  Given the scope of the deposition topics, however, an evidentiary finding that the Ngans are the alter egos of Defendant is not justified.  Whether a rebuttable presumption or inference that the Ngans are the alter egos of Defendant Sanya Gaosheng should be granted for purposes of withstanding a motion to dismiss, is appropriately left to the court presiding over any action that Plaintiff may file against the Ngans based on the alter ego doctrine.

## 2.   Plaintiff's Request for Further Monetary Sanctions Against Defendant Sanya Gaosheng.

In its previous Order (EFC No. 101), the Court awarded monetary sanctions against Defendant Sanya Gaosheng for its failure to appear at the Rule 30(b)(6) deposition as ordered by the Court.  The Court, however, stayed the imposition of the monetary sanctions if Defendant agreed to appear and testify at the deposition.  The Court subsequently awarded Plaintiff sanctions in the amount of $19,423.87 and ordered Defendant to pay them by March 11, 2016.  There was some discussion between the parties as to whether Defendant would appear for the deposition, but Defendant ultimately declined to do so.  Plaintiff again noticed the deposition for March 4, 2016 and Defendant did not appear.  Plaintiff requests that the Court award its attorney's fees and expenses incurred with respect to the March 4, 2016 depositon.

As noted above, the imposition of monetary sanctions as a means to induce Defendant to appear for the deposition is likely to be futile.  The Court will, however, award the sanctions requested by Plaintiff given that Defendant did appear in Court to contest prior motion for sanctions and engage in discussions with Plaintiff about attending the re-noticed deposition.  The Court also believes such sanctions are justified in view of the fact that Defendant selectively chooses when it

10

wishes to appear to contest matters in this case or alternatively decides not to appear in disregard of the Court's orders.  Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Sanctions (ECF No. 107) is **granted**, in part, and **denied**, in part, as follows:

1.      Plaintiff's request for evidentiary sanctions against Defendant and the Ngans is denied, without prejudice, for the reasons set forth above.  Such denial does not preclude a court presiding in an action brought by the Plaintiff against the Ngans from granting it a rebuttable presumption or inference as the court may deem proper.

2.      Plaintiff's request for an award of attorney's fees and costs incurred in re-noticing the Rule 30(b)(6) deposition for March 11, 2016 is granted.

3.      Counsel for Plaintiff shall, no later than 15 days from entry of this order, serve and file a memorandum, supported by the affidavit of counsel, establishing the amount of attorney's fees and costs incurred in the motion addressed in this order.  The memorandum shall provide a reasonable itemization and description of the work performed, identify the attorney(s) or other staff member(s) performing the work, the customary fee of the attorney(s) or staff member(s) for such work, and the experience, reputation and ability of the attorney performing the work.  The attorney's affidavit shall authenticate the information contained in the memorandum, provide a statement that the bill has been reviewed and edited, and a statement that the fees and costs charged are reasonable.

4.      Counsel for Defendant shall have 15 days from service of the memorandum of costs and attorney's fees in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought, and any equitable considerations deemed appropriate for the court to consider in determining the amount of costs and fees which should be awarded.

. . .

. . .

. . .

. . .

11

5.      Counsel for Plaintiff shall have 11 days from service of the responsive memorandum in which to file a reply.

DATED this 20th day of June 2016.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge

12